**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

JEFFERY ANTIONE KEMP,

       Plaintiff,

vs.

BLACK HAWK COUNTY JAIL, TONY
THOMPSON, WARDEN OF BLACK
HAWK COUNTY JAIL, MARK
HERBST, BRAD WALZ, WATERLOO
POLICE DEPARTMENT, ANDREA
FRANA, BILL HERKELMAN, ADAM
LIDDLE, KYE RICHTER, NICHOLAS
SADD, BRICE LIPPERT, DAVID
MCFARLAND, CHRIS GERGEN,
MICHAEL RASMUSSEN, ERYN
HAGEMAN, KERRY DEVINE, GREG
FANGMAN, MELISSA LUDWIG,

       Defendants.

No. C15-2094-LRR

**ORDER**

———————————

## TABLE OF CONTENTS

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *NON-DISPOSITIVE MOTIONS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.*   *SUMMARY JUDGMENT STANDARD* . . . . . . . . . . . . . . . . . . . . . . . . *3*

*V.*    *RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . *5*

*VI.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

      *A.*    *Civil Rights Claims under 42 U.S.C. § 1983* . . . . . . . . . . . . . . . . . *8*
      *B.*    *Failure to Properly Respond* . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
      *C.*    *Plaintiff's Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

       1.    *Exhaustion of Administrative Remedies* . . . . . . . . . . . . . . . *12*

       2.    *Nature of Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

       3.    *Pretrial-Detention Conditions: Privacy Claims, Cell Restriction Claims & Exposure to Floor Stripping Agent Claim* . . . . . . . . . . . . . . . . . . . . . . *16*

       4.    *Other Argument* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *23*

       5.    *Due Process Claim Against Remaining Defendants* . . . . . . . *24*

**VII.**   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *25*

## I. INTRODUCTION

The matter before the court is the motion for summary judgment (docket no. 19) filed by the Black Hawk County Jail, Tony Thompson, Warden of Black Hawk County Jail and Mark Herbst (collectively, "Jail Defendants"). Proceeding pro se, the plaintiff filed a response (docket no. 21). Along with his response, the plaintiff submitted an appendix (docket no. 21-1), which included an affidavit of Matt Tarkett and documents associated with the plaintiff's state court criminal case. The Jail Defendants filed a reply (docket no. 22). The plaintiff filed a sur-reply (docket no. 23). Subsequently, the Jail Defendants filed a motion to amend/correct their appendix in support of their motion for summary judgment (docket no. 24), and the plaintiff filed a motion to supplement his response (docket no. 25). Neither party requested oral argument, and, in any event, oral argument is not necessary. The motion for summary judgment and other pending motions are fully submitted.

## II. PROCEDURAL HISTORY

The plaintiff commenced this lawsuit on November 6, 2015. As directed by the court, the clerk's office filed the plaintiff's original complaint (docket no. 8) on February 5, 2016. And, consistent with the court's February 5, 2016 order and March 9, 2016 order, the plaintiff filed an amended complaint (docket no. 12). He also filed a motion to appoint counsel (docket no. 13), which the court denied (docket no. 14). In his amended complaint, the plaintiff asserts that: (1) Waterloo police officers investigating a robbery

included incorrect statements in their reports, and, as a result, he was detained at the Black Hawk County Jail; (2) he was strip searched after arriving at the Black Hawk County Jail; (3) his cells had video cameras and, while using the toilet, individuals could see his private parts; (4) for several days, he was only able to access personal items, such as soap, a toothbrush, toothpaste, a bible or legal mail, outside of his cell for one hour each day; and (5) Tony Thompson ordered deputies to strip and buff the floor and, when doing so, they negligently used a stripping agent and failed to ventilate the area. The Jail Defendants filed an answer (docket no. 17), and, shortly thereafter, the Jail Defendants filed their motion for summary judgment. In relation to the Jail Defendants' motion for summary judgment, the parties filed additional documents and motions.

### III. NON-DISPOSITIVE MOTIONS

The plaintiff does not resist the Jail Defendants' inclusion of additional materials in their appendix, and the Jail Defendants do not resist the plaintiff's additional statements in support of his response. Accordingly, the Jail Defendants' motion to amend/correct their appendix in support of their motion for summary judgment (docket no. 24) and the plaintiff's motion to supplement his response (docket no. 25) are granted.

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)).

"The movant 'bears the initial responsibility of informing the district court of the basis for [his or her] motion,' and must identify 'those portions of [the record] . . . which [he or she] believes demonstrate the absence of a genuine issue of material fact.'"

*Torgerson*, 643 F.3d at 1042 (second and third alterations in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also* Fed. R. Civ. P. 56(c)(1)(A) (emphasizing that a motion must be supported by "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"). Once the movant has done so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042 (quoting *Celotex Corp.*, 477 U.S. at 324).

When doing so, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts' . . . ." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "To survive a motion for summary judgment, the [nonmovant] must substantiate his [or her] allegations with sufficient probative evidence [that] would permit a finding in [his or her] favor based on more than mere speculation, conjecture, or fantasy." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (third alteration in original) (internal quotation marks omitted) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)). The nonmovant cannot simply rely on unsupported "self-serving allegations and denials . . . to create a genuine issue of material fact." *Anuforo v. Comm'r of Internal Revenue*, 614 F.3d 799, 807 (8th Cir. 2010); *accord Wilson v. Miller*, 821 F.3d 963, 970 (8th Cir. 2016). The nonmovant must substantiate factual allegations with independent documentary evidence. *See Argenyi v. Creighton Univ.*, 703 F.3d 441, 446 (8th Cir. 2013). Hence, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Throughout the summary judgment stage, the court must view genuinely disputed "evidence in the light most favorable to the nonmoving party and giv[e] the nonmoving

party the benefit of all reasonable inferences." *Crawford v. Van Buren Cty., Ark.*, 678 F.3d 666, 669 (8th Cir. 2012) (citing *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1035 (8th Cir. 2010)); *see also Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (stating that a court views the facts in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts); *Murchison v. Rogers*, 779 F.3d 882, 886-87 (8th Cir. 2015) (viewing evidence in light most favorable to nonmoving party and giving nonmoving party the benefit of all reasonable inferences). Moreover, "the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial." *Schlif v. Eli Lilly & Co.*, 687 F.3d 947, 949 (8th Cir. 2012) (citing *Anderson*, 477 U.S. at 249). No genuine issue for trial exists only if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Ricci*, 557 U.S. at 586 (quoting *Matsushita*, 475 U.S. at 587); *accord Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012); *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 791 (8th Cir. 2009).

## V. RELEVANT FACTUAL BACKGROUND

The plaintiff was arrested and charged with committing robbery in the first degree. *See* Amended Complaint (docket no. 12) at 1-3; Statement of Undisputed Material Facts (docket no. 19-1) at ¶ 1; App'x (docket no. 19-5) at 4-14, 38, 45, 67-70; Plaintiff's App'x (docket no. 21-1) at 3-17. From September 17, 2015 to January 28, 2016, the plaintiff was detained at the Black Hawk County Jail. *See* Amended Complaint (docket no. 12) at 3; Statement of Undisputed Material Facts (docket no. 19-1) at ¶ 1; App'x (docket no. 19-5) at 4-14, 38, 43.

During the intake at the Black Hawk County Jail, a male deputy conducted a standard, visual strip search of the plaintiff. *See* Amended Complaint (docket no. 12) at 3; Statement of Undisputed Material Facts (docket no. 19-1) at ¶ 3; App'x (docket no. 19-5) at 4-14, 38; App'x (docket no. 19-7) at 59-64, 94-97.

Due to the plaintiff's criminal history and the nature of the charge that he faced, the plaintiff was placed in a Special Housing Unit cell, which is a maximum security cell that allows the least amount of contact among inmates. *See* Amended Complaint (docket no. 12) at 3; Statement of Undisputed Material Facts (docket no. 19-1) at ¶ 4; App'x (docket no. 19-5) at 4-14, 45-50; App'x (docket no. 19-7) at 43-47. The plaintiff remained in a Special Housing Unit cell from September 17, 2015 to September 23, 2015, which is when he was moved to a maximum security cell with more privileges. *See* Statement of Undisputed Material Facts (docket no. 19-1) at ¶ 4; App'x (docket no. 19-5) at 4-14, 45-50; App'x (docket no. 19-7) at 43-47. On October 17, 2015, the plaintiff was placed in general population, which has more privileges, and he remained there until he was discharged on January 28, 2016. *See* Statement of Undisputed Material Facts (docket no. 19-1) at ¶ 4; App'x (docket no. 19-5) at 4-14, 45-50; App'x (docket no. 19-7) at 43-47.

While confined within the Black Hawk County Jail, the plaintiff was under video surveillance in his cell, and the plaintiff was aware that his cell was under visual surveillance. *See* Amended Complaint (docket no. 12) at 3-4; Statement of Undisputed Material Facts (docket no. 19-1) at ¶¶ 4-5; App'x (docket no. 19-5) at 4-14, 44; App'x (docket no. 19-7) at 59-67, 69-71, 94-97; App'x (CD #2 Jail Orientation). When using the toilet, the plaintiff could have taken precautions, such as using his clothing or his hand, to prevent anyone from viewing his genitals, and his exposure while using the toilet was limited. *See* Statement of Undisputed Material Facts (docket no. 19-1) at ¶ 5; App'x (docket no. 19-5) at 4-14; App'x (docket no. 19-7) at 94-97; App'x (CD #1 SHU Video Surveillance). Another inmate saw the plaintiff use the toilet on several occasions. *See* Amended Complaint (docket no. 12) at 4; Plaintiff's App'x (docket no. 21-1) at 2.

During the period that the plaintiff spent time in a maximum security cell, the items that the plaintiff possessed, including hygiene products, reading materials, legal papers and commissary food, and the activities he could do, including attending chapel, were limited in an effort to control the plaintiff, who was classified as a maximum-security inmate and,

as such, was at the highest risk of harming himself and undermining institutional security. *See* Supplement (docket no. 3); Supplement (docket no. 4); Amended Complaint (docket no. 12) at 4; Statement of Undisputed Material Facts (docket no. 19-1) at ¶ 6; App'x (docket no. 19-5) at 4-14; App'x (docket no. 19-7) at 43-47, 56-58.

When in his general population cell in late December, the plaintiff was indirectly exposed to fumes of a floor stripper when deputies stripped wax and dirt off of the dayroom floor to make it healthier for inmates. *See* Supplement (docket no. 5); Amended Complaint (docket no. 12) at 4-5; Statement of Undisputed Material Facts (docket no. 19-1) at ¶ 7; App'x (docket no. 19-5) at 4-14, 88; App'x (docket no. 19-7) at 37-41, 98-100. No deputy wore a mask while stripping the floor, and no deputy suffered any harm as a result of being exposed to the floor stripper. *See* Statement of Undisputed Material Facts (docket no. 19-1) at ¶ 7; App'x (docket no. 19-5) at 4-14; App'x (docket no. 19-7) at 98-100. After he was exposed to fumes on December 28, December 29 and December 31 of 2015, the plaintiff experienced shortness of breath and migraine headaches, and, pursuant to a January 2, 2016 kite where he indicated that he was having migraine headaches, medical staff placed him on medication until he declined to take it. *See* Supplement (docket no. 5); Amended Complaint (docket no. 12) at 5; App'x (docket no. 19-5) at 4-14, 87-102; App'x (docket no. 19-7) at 1-36.

From September 17, 2015 to January 28, 2016, the plaintiff submitted multiple grievances, but the issues he grieved while at the Black Hawk County Jail are different than the amended complaint claims that relate to the conditions that he faced before he was placed in a maximum security cell, while he was confined in a maximum security cell or after he was moved to a cell in general population. *See* Statement of Undisputed Material Facts (docket no. 19-1) at ¶ 2; App'x (docket no. 19-5) at 4-14, 71-86; App'x (docket no. 19-7) at 48-55.

# VI. ANALYSIS

The plaintiff contends that the defendants' actions amounted to a civil rights violation under 42 U.S.C. § 1983. Specifically, the plaintiff alleges a violation of his right to due process, right to privacy and right to humane conditions of confinement.

## A. Civil Rights Claims under 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Such statute was designed to provide "a broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, 42 U.S.C. § 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "[O]ne cannot go into court and claim a 'violation of [42 U.S.C.] § 1983'—for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, 42 U.S.C. § 1983 provides a remedy for violations of the "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (stating that 42 U.S.C. § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred'"); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (noting that the phrase "Constitution and laws" means that 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statutes, as well as those created by the Constitution). Thus, "[t]o state a claim under [42

U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution [or] laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011) ("To state a claim under § 1983, a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right.").

In response to a claim under 42 U.S.C. § 1983, a defendant may assert the defense of qualified immunity. The Eighth Circuit has explained that:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.

*Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citations omitted). "The defense of qualified immunity gives government officials engaged in discretionary activities immunity from liability unless their conduct violates 'clearly established statutory or constitutional rights.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Officials are entitled to qualified immunity only to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hedges v. Poletis*, 177 F.3d 1071, 1074 (8th Cir. 1999) (quoting *Harlow*, 457 U.S. at 818). "Qualified immunity is available 'to all but the plainly incompetent or those who knowingly violate the law.'" *Avalos v. City of Glenwood*, 382

F.3d 792, 798 (8th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (quoting *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004)) (internal quotation marks omitted). When analyzing qualified immunity, the Eighth Circuit has instructed district courts to conduct a two-part inquiry:

> The court must first consider the threshold inquiry of whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the defendant['s] conduct violated a constitutional right. If a constitutional right has not been violated, it is unnecessary to inquire further regarding qualified immunity. If a violation could be established on the facts alleged, the second inquiry is whether the right was clearly established at the time the violation occurred.

*Id.* (citations omitted); *accord Smith v. City of Minneapolis*, 754 F.3d 541, 545-46 (8th Cir. 2014).

### B. Failure to Properly Respond

The plaintiff filed a response. But, the plaintiff's response is not proper because he did not address the Jail Defendants' statement of material facts, provide an additional statement of material facts, provide relevant legal authority to support his assertions or authenticate materials in the record. Indeed, the plaintiff did not expressly admit, deny or qualify each of the facts set forth in the statement of undisputed material facts that the Jail Defendants attached to their motion for summary judgment. *See* LR 56.b.2. The plaintiff's failure to file a proper response to the Jail Defendants' statement of undisputed material facts constitutes an admission of each of these facts. *See* LR 56.b.; *accord* Fed. R. Civ. P. 56(e)(2)-(4) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion, . . . grant summary judgment

if the motion and supporting materials—including facts considered undisputed—show that the movant is entitled to it . . . or . . . issue any other appropriate order").

Because the plaintiff did not file a proper resistance and did not request additional time to respond, it is appropriate to consider the merits of the Jail Defendants' motion for summary judgment without waiting any longer for the plaintiff to furnish evidence, citations or other reasons for denying it. *See Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993) ("Even if a motion for summary judgment . . . stands unopposed, the . . . court must still determine that the moving party is entitled to judgment as a matter of law . . . ."); *cf. Johnson v. Boyd-Richardson Co.*, 650 F.2d 147, 149 (8th Cir. 1981) (requiring court to "inquire into the merits of [a motion to dismiss] and to grant or deny it, as the case may be, in accordance with the law and the relevant facts"). In light of the plaintiff's admission of the facts included in the Jail Defendants' statement of undisputed material facts, the court concludes that the Jail Defendants are entitled to summary judgment. It is appropriate to grant summary judgment in favor of the Jail Defendants for the reasons stated in their briefs. The Jail Defendants adequately set forth the law and apply such law to the undisputed material facts. Given the plaintiff's nearly complete failure to come forward with any evidence or relevant legal authority,[1] the Jail Defendants are entitled to judgment as a matter of law with respect to the plaintiff's strip search claim, video camera claim and conditions of confinement/risk to health claims. The record, even when viewed in the light most favorable to the plaintiff, fails to establish a genuine issue of material fact with regard to whether the plaintiff exhausted his administrative remedies, whether the Jail Defendants violated the plaintiff's constitutional rights and whether the Jail Defendants are entitled to qualified immunity.

---

[1] The court notes that it need not consider incompetent evidence. *See Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006). The plaintiff's unsworn and unsupported statements are not competent evidence, and the court declines to rely on them. *Id*.

### C.  Plaintiff's Claims[2]

### 1.  Exhaustion of Administrative Remedies

"No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) (stating that "exhaustion in cases covered by § 1997e(a) is now mandatory"); *Washington v. Uner*, 273 F. App'x 575, 576-77 (8th Cir. 2008) (applying § 1997e(a)).  Proper exhaustion of administrative remedies is necessary so that corrections officials are afforded the "'time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (quoting *Porter*, 534 U.S. at 525).

Although he acknowledges in his response that there is a prisoner grievance procedure that was available to him in the Black Hawk County Jail, the plaintiff maintains that staff within the Black Hawk County Jail prevented him from utilizing the grievance procedure and exhausting his administrative remedies.  *See, e.g.*, Supplement (docket no. 2); Supplement (docket no. 3); Supplement (docket no. 4); Supplement (docket no. 5); Supplement (docket no. 6); Original Complaint (docket no. 8); Amended Complaint (docket no. 12); Response (docket no. 21).  Nevertheless, while at the Black Hawk County Jail, the plaintiff submitted multiple grievances and they indicate the following: (1) on October 11, 2015, the plaintiff had concerns related to the grievance process, the professionalism of corrections officers and the restrictions that he faced while in maximum security, including the inability to order commissary products such as food and coffee, the lack of television, the lack of access to the phone when he really needed to use it, the lack

---

[2] The court notes that the plaintiff is proceeding under 28 U.S.C. § 1915, which requires the court to dismiss a case at any time if it determines that a plaintiff's action fails to state a claim upon which relief can be granted.

of access to the law library and the lack of access to a notary; (2) on November 12, 2015, the plaintiff had concerns about the opening of his legal mail; (3) on November 15, 2015, the plaintiff had concerns about the opening of his legal mail; (4) on November 25, 2015, the plaintiff had concerns about the opening of his legal mail; (5) on January 11, 2016, the plaintiff had concerns about the cold temperature in his cell; (6) on January 12, 2016, the plaintiff had concerns about the cold temperature in his cell; and (7) on January 20, 2016, the plaintiff had concerns about thermal underwear being unavailable through the commissary. *See* App'x (docket no. 19-5) at 71-86; App'x (docket no. 19-7) at 48-55.

Moreover, in his response, the plaintiff contends that, prior to filing the instant action, he sought to file a grievance specifically related to: (1) the visual strip search that occurred during his intake; (2) the use of video cameras in his cells while he used the toilet; and (3) the use of a floor stripping agent to maintain the floors while he was in his cell. He, however, does not contend that he ever sought to file a grievance regarding: (1) his access to personal items, such as soap, a toothbrush, toothpaste, a bible or legal mail, while he was confined in a maximum security cell; (2) the maximum security cell policies that put his health at risk because he did not have adequate access to soap before meals and after he used the toilet; or (3) the maximum security policies that only allowed him to exercise, maintain personal hygiene, read, write letters, contact counsel, use the telephone and/or practice religion during the one hour each day that he was not in his cell. *See* Response (docket no. 21).

Given the content and timing of the grievances that the plaintiff submitted and the plaintiff's assertions in his response, it is clear that the plaintiff did not properly exhaust any claim that relates to the conditions that he faced before he was placed in a maximum security cell, while he was confined in a maximum security cell or after he was moved to a cell in general population. *See, e.g.*, *Woodford*, 548 U.S. at 84 (stating that the exhaustion requirement is not satisfied if an inmate files "an untimely or otherwise

procedurally defective administrative grievance or appeal" or effectively bypasses the administrative process simply by waiting until the grievance procedure is no longer available); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (same); *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005) (stating that a prisoner must take advantage of the procedure offered); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032-33 (10th Cir. 2002) (emphasizing that an inmate must properly complete the grievance process); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (stating that a person must follow the rules governing the filing and prosecution of a claim); *Dixon v. Page*, 291 F.3d 485, 488-89 (7th Cir. 2002) (finding that exhaustion requirements are not met if an inmate made some error in following the grievance procedure); *Poro v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (requiring complaints and appeals to be filed in the place and at the time the prison's administrative rules require); *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (reiterating that a plaintiff cannot claim that it is futile to exhaust his remedies because he is now time-barred under the regulations). The plaintiff's assertion that he attempted to grieve the visual strip search that occurred during his intake, the use of video cameras in his cells while he used the toilet and the use of a floor stripping agent to maintain the floors while he was in his cell is contradicted by the record. Indeed, as of October 11, 2015, the plaintiff only had concerns related to the grievance process, the professionalism of corrections officers and several restrictions that he faced while in maximum security, including the inability to order commissary products such as food and coffee, the lack of television, the lack of access to the phone when he really needed to use it, the lack of access to the law library and the lack of access to a notary. At that point in time, he did not have any concerns related to the strip search, the use of video cameras or the lack of access to personal items while in his maximum security cell. And, after the plaintiff left maximum security on October 18, 2015, the plaintiff only complained about the opening of his legal mail, the temperature in his cell and the availability of additional

clothing. He did not complain about the correctional officers' use of a floor stripping agent in December of 2015. Because the record demonstrates that the plaintiff did not comply with 42 U.S.C. § 1997e(a), it is appropriate to dismiss with prejudice the plaintiff's unexhausted claims. *See Woodford*, 548 U.S. at 92-93; *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Berry v. Kerik*, 366 F.3d 85, 86 (2d Cir. 2004).

## 2.    *Nature of Claims*

The plaintiff never asserted that he is suing the defendants in their individual capacities. Consequently, the plaintiff is only suing the defendants in their official capacities. *See Alexander v. Hedback*, 718 F.3d 762, 766 n.4 (8th Cir. 2013) (noting that it is assumed that a plaintiff is suing a defendant only in his or her official capacity if a plaintiff does not expressly and unambiguously state that a defendant is being sued in his or her individual capacity). The plaintiff, however, does not establish that any conduct occurred pursuant to an unconstitutional policy or as a result of a failure to properly supervise or train an employee. Hence, the plaintiff's action is subject to dismissal. *See id.* at 766-67 (determining that plaintiff failed to set forth sufficient facts to show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation); *Elder-Keep*, 460 F.3d at 986-87 (same).

Relatedly, "[t]o establish municipal liability under [42 U.S.C.] § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817-18 (8th Cir. 2009) (citing *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978)). The plaintiff's claim against the Black Hawk County Jail and the Waterloo Police Department fails because the plaintiff does not establish that either the Black Hawk County Jail or the Waterloo Police Department are liable for an injury that one of their employees inflicted because "a particular municipal policy or custom itself violates federal law, or directs an employee to do so" or a particular "lawful municipal policy or custom was

adopted with 'deliberate indifference' to its known or obvious consequences." *Id.* (citing *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008)); *cf. Chambers v. St. Louis Cty.*, 247 F. App'x 846, 848 (8th Cir. 2007) (concluding that speculative allegations about an apparent policy were merely conclusory).

Further, because the plaintiff does not establish that he suffered a physical injury, the plaintiff's ability to recover compensatory damages is limited. *See* 42 U.S.C. § 1997e(e); *see also Williams v. Hobbs*, 662 F.3d 994, 1011-12 (8th Cir. 2011) (discussing the availability of compensatory damages); *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004) (concluding that 42 U.S.C. § 1997e(e) limits the recovery for mental or emotional injury in all federal actions brought by prisoners). The evidence of record does not justify the award of compensatory damages, which are only available if an inmate has the requisite physical injury to support a claim for mental or emotional suffering.[3] *See, e.g.*, *Smith v. Moody*, 175 F.3d 1025 (8th Cir. 1999) (explaining that § 1997e(e) requires a physical injury that is more than de minimis). And, the alleged facts do not justify the award of punitive damages, which are only available if an inmate establishes that the defendants acted with evil motive or reckless indifference. *See Williams*, 662 F.3d at 1011-12 (discussing the standard for awarding punitive damages). So, if the plaintiff had stated a claim upon which relief could be granted, nominal damages would only be available to the plaintiff.

### 3. *Pretrial-Detention Conditions: Privacy Claims, Cell Restriction Claims & Exposure to Floor Stripping Agent Claim*

In his response, the plaintiff argues that the conditions he faced while a pretrial-detainee violated his constitutional rights. Namely, he asserts that: (1) his privacy rights

---

[3] The court notes that the plaintiff complained about his finger more than a month after he left maximum security and he complained about the rash on his back several months after he left maximum security. *See* App'x (docket no. 19-5) at 8-90, 99, 101-02; App'x (docket no. 19-7) at 33.

were violated when he was (a) subjected to a strip search upon entering the Black Hawk County Jail and (b) monitored by a video camera while using the toilet in his cell; (2) his placement in a maximum cell with restrictions was unjustified; and (3) his basic human needs were unmet when he was exposed to a floor stripping agent.

Regarding the visual strip search policy at the Black Hawk County Jail, the plaintiff maintains that a deputy demanded that he: (1) take all of his clothing off; (2) lift his penis; (3) turn around; (4) bend over; (5) squat; and (6) cough. He maintains that his strip search is cruel and unusual punishment and that there are less intrusive means to prevent inmates from concealing contraband when entering the Black Hawk County Jail. As a result of the visual strip search, the plaintiff maintains that he felt humiliated, embarrassed and anxious. He states that the Jail Defendants unnecessarily and wantonly caused him to experience pain because the visual strip search policy lacks sufficient justification.

Concerning the use of video cameras in maximum security cells, the plaintiff asserts that the Jail Defendants violated his constitutional rights because they failed to prevent the frequent, deliberate and gratuitous exposure of nude prisoners of one sex to guards, nurses and jail staff of the other sex on the video monitor in the correctional officers' station. He states that he could not cover himself when using the toilet because jail policy prevents him from using bedding material to create a curtain. And, he states that, in addition to the use of video cameras in maximum security cells, four medium/minimum security cells have video cameras, the video monitor for those video cameras is on the desk in the correctional officers' station, such monitor can be viewed by inmates and another inmate told the plaintiff that he observed and saw the plaintiff use the toilet on several occasions. As a consequence of video cameras being used by the Jail Defendants, the plaintiff maintains that he felt humiliated, embarrassed, shameful and anxious. The plaintiff contends that the policies of the Black Hawk County Jail violated his right to privacy, his right to be free

from unreasonable searches and seizures and his right to be free from cruel and unusual punishment.

Regarding the restrictions that he faced while confined in a maximum security cell, the plaintiff asserts that he only had limited access to soap and, as a result, could not properly wash his hands after using the toilet or before he ate meals and developed an infection on his finger and a rash on his back. He also asserts that he only had one hour per day to exercise, brush his teeth, wash his hands with soap, shower with soap, read, write letters, contact his attorney, use the telephone and practice his religion.

As for the Jail Defendants' use of a stripping agent to maintain the floors, the plaintiff contends that they did not have adequate training or experience and, consequently, they did not properly mix the stripping agent or ventilate the area. He also asserts that the Jail Defendants' negligence and deliberate indifference caused him to experience health issues, including migraine headaches, shortness of breath and respiratory problems.

> In evaluating the constitutionality of pretrial-detention conditions, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). The Due Process Clause prohibits any punishment before someone is adjudicated guilty. *Id*. We must first ask whether a given imposition is of "a de minimis level . . . with which the Constitution is not concerned." *Id*. at 539 n.21 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)). Then, if the imposition is of constitutional concern, the second question is whether it "amounts to 'punishment' in the constitutional sense." *Id*. at 537.

> This second question—whether there is punishment in the constitutional sense—arises in pretrial detainee cases because detention always involves some loss of freedom and of life's ordinary comforts. *Id*. Yet "the Government concededly may detain [someone] to ensure his presence at

trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment." *Id*. at 536-37. The relationship of the condition or restriction to nonpunitive government purposes is key. If a pretrial-detention condition or restriction "is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id*. at 539. But if it "is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id*.

*Ingram v. Cole Cty.*, 2017 U.S. App. LEXIS 771 at *5-6 (8th Cir. Jan. 17, 2017).

Given the law, it is clear that the plaintiff's strip search claim is deficient because the evidence establishes that the Jail Defendants acted pursuant to a legitimate concern for maintaining security in the Black Hawk County Jail. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 324-39 (2012) (determining that search procedures, which required detainees to remove their clothing and expose the most private areas of their bodies to close visual inspection as a routine part of the intake process, struck a reasonable balance between inmate privacy and the needs of the institution); *Story v. Foote*, 782 F.3d 968, 971 (8th Cir. 2015) (finding that plaintiff's allegation that officers conducted a visual body-cavity search did not state a claim for the violation of a clearly established constitutional right); *Jacobson v. McCormick*, 763 F.3d 914, 917 (8th Cir. 2014) (concluding that strip search did not violate clearly established law); *Franklin v. Lockhart*, 883 F.2d 654, 656-57 (8th Cir. 1989) (concluding that visual body cavity searches do not violate either the Eighth Amendment or the Fourth Amendment); *see also Maryland v. King*, ___ U.S. ___, ___, 133 S. Ct. 1958, 1978 (2013) (reiterating that a search of a detainee's person when he is booked into custody may be extensive); *Beaulieu v. Ludeman*, 690 F.3d 1017, 1027-30 (8th Cir. 2012) (concluding that unclothed body searches of

patients before leaving the facility was not unreasonable); *Timm v. Gunter*, 917 F.2d 1093, 1100-01 (8th Cir. 1990) (finding that opposite-sex pat searches do not violate an inmate's constitutional rights in light of security interests and equal employment interests).

Similarly, it is clear that the plaintiff's claim regarding the use of video cameras in maximum security cells is deficient because the evidence shows that the Jail Defendants' reasonable use of video cameras promotes the security interests of jailers and inmates. *See Story*, 782 F.3d at 971-72 (concluding that neither female officer's viewing of visual body-cavity inspection from the master control room through a video feed from a security camera nor the presence of other inmates when officers conducted the visual body-cavity search stated a claim for the violation of clearly established rights); *Garrett v. Thaler*, 560 F. App'x 375, 380-81 (5th Cir. 2014) (per curiam) (holding that use of surveillance cameras by all guards increases overall security of the prison); *Beaulieu*, 690 F.3d at 1043 (finding that privacy claim regarding the ability of others to view patients while they used showers and toilets was not cognizable in light of legitimate need to closely watch patients); *United States v. Hogan*, 539 F.3d 916, 923 (8th Cir. 2008) (concluding that detainees do not have a reasonable expectation of privacy in their jail cells); *Hill v. McKinley*, 311 F.3d 899, 903-05 (8th Cir. 2002) (determining that no violation of Fourth Amendment privacy rights occurred when officers required female prisoner to disrobe in front of officers of opposite sex, walk down hallway naked with officers of the opposite sex and lay on a restrainer board naked and spread-eagled in the presence of male officers); *Timm*, 917 F.2d at 1101-02 (explaining that constant visual surveillance by guards of both sexes is a reasonable and necessary measure to promote inmate security). *But see Ingram*, 2017 U.S. App. LEXIS 771 at *8-11 (concluding that detainees are entitled to clothing and leaving detainees without clothing while they sleep for two or three times per week is not reasonably related to a legitimate goal).

Regarding the other pretrial-detention conditions or restrictions that the plaintiff experienced while confined in a maximum security cell, all of them are reasonably related to legitimate governmental objectives. *See Beard v. Banks*, 548 U.S. 521, 528-30 (2006); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). Because it is undisputed that maximum security policies related to commissary food and drink, time spent within a cell, religious observance, access to hygiene products and access to reading materials, including legal materials, further the safety and security of the Black Hawk County Jail, the plaintiff's confinement in a maximum security cell from September 17, 2015 to October 17, 2015 does not amount to punishment in the constitutional sense.

As for the use of a floor stripping agent to maintain the floors, it is clear that "'[a] minimal deprivation does not violate the Constitution.'" *See Ingram*, 2017 U.S. App. LEXIS 771 at *6 (quoting *Green v. Baron*, 879 F.2d 305, 309 (8th Cir. 1989)). It is also clear that "[t]emporary discomfort alone is not enough," *id*. (citing Green, 879 at 310), and a condition of pretrial detention that is reasonably related to legitimate government interests does not amount to a violation of a detainee's due process rights, *see Owens*, 328 F.3d at 1027.

Here, the plaintiff maintains that the Jail Defendants negligently applied sometimes non-diluted floor stripper directly to the floor outside his cell and only briefly used a fan to control the smell. But, liability under 42 U.S.C. § 1983 may only be imposed "for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Mere negligence on the part of prison officials is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 332 (1986) (negligence is not actionable under 42 U.S.C. § 1983); *Ambrose v. Young*, 474 F.3d 1070, 1076-77 (8th Cir. 2006) (emphasizing that more than mere negligence is necessary to establish a constitutional violation); *Blades v. Schuetzle*, 302 F.3d 801, 804 (8th Cir. 2002) (stating that mere negligence is insufficient to establish a

violation of the Eighth Amendment); *Morstad v. Department of Corrections & Rehabilitation*, 147 F.3d 741, 744 (8th Cir. 1998) (clarifying that a deprivation of a federal right is necessary to support liability under 42 U.S.C. § 1983); *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) ("[N]egligence is inappropriate as an Eighth Amendment standard."); *Givens v. Jones*, 900 F.2d 1229, 1232 (8th Cir. 1990) (stating that the Eighth Amendment does not protect against mere acts of negligence on the part of prison officials).

Clearly, the Jail Defendants were cleaning or maintaining the floors as Iowa Code section 356.6 requires; they were not punishing the plaintiff. *See Wilson v. Seiter*, 501 U.S. 294, 298-302 (1991). And, the conditions that the plaintiff was exposed to only lasted a short period of time. Consequently, no violation of the plaintiff's constitutional right to due process occurred. *Cf. Stickley v. Byrd*, 703 F.3d 421, 424 (8th Cir. 2013) (determining that no constitutional violation occurred where a detainee was given one roll of toilet paper per week and had to wait 30 minutes to wash himself in the shower after the roll ran out); *Beaulieu*, 690 F.3d at 1045 (explaining that patients' exposure to the unsanitary conditions for a period of time that did not exceed 24 hours was "too short a time to constitute a due process violation"); *Smith*, 87 F.3d at 268-69 (concluding that four days in a cell with the stench of one's own feces because the toilet overflowed "do[es] not rise to a level of constitutional significance"); *Whitnack v. Douglas Cty.*, 16 F.3d 954, 958 (8th Cir. 1994) (observing that certain conditions are not cruel and unusual because the inmate was subjected to the condition for only a short period of time); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (holding no Eighth Amendment violation where prisoner was confined to unsanitary cell for 11 days and noting that cleaning supplies were available to the prisoner).

Moreover, as a result of the Jail Defendants' negligence, the plaintiff states that he experienced migraine headaches and respiratory problems, but he acknowledges that the

Jail Defendants addressed his concerns. Consequently, it cannot be said that the Jail Defendants were deliberate indifferent to any serious need that the plaintiff had. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (holding that, to be deliberately indifferent, defendant must have "failed to act despite . . . knowledge of a substantial risk of serious harm"); *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842); *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015) (stating that inmate must show that defendants were more than grossly negligent and that their mental state was akin to criminal recklessness, that is, they disregarded a known risk to his health); *Williams v. Kelso*, 201 F.3d 1060, 1065 (8th Cir. 2000) ("[T]he law requires . . . a showing of subjective awareness by the prison officials of a "substantial risk" of "serious harm" . . . in order to establish [a viable] cause of action."); *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993) (emphasizing that deliberate indifference requires a highly culpable state of mind approaching actual intent).

### 4. *Other Argument*

Having concluded that the Jail Defendants are entitled to judgment as a matter of law because the record fails to establish a genuine issue of material fact with regard to whether the Jail Defendants violated the plaintiff's constitutional rights, it is not necessary to review the Jail Defendants' remaining contention that they are entitled to qualified immunity. Nonetheless, qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law", *Malley*, 475 U.S. at 341, and the record does not establish that it would have been clear to a reasonable officer that the conduct of any Jail Defendant was unlawful in the situation confronted, *see Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see also Plumhoff v. Rickard*, ___ U.S. ___, ___, 134 S. Ct. 2012, 2022-23 (2014) (addressing the defense of qualified immunity and emphasizing that "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any

reasonable official in the defendant's shoes would have understood that he was violating it"); *Smith*, 754 F.3d at 546 (stating that the focus is on whether the officer had fair notice that the conduct was unlawful); *Hill*, 311 F.3d at 903-04 (concluding that defendants were entitled to qualified immunity because their actions did not violate clearly established law).

### 5.    *Due Process Claim Against Remaining Defendants*

The plaintiff claims that the remaining defendants, that is, Waterloo police officers and Brad Walz, as a prosecutor, violated his constitutional rights.  More specifically, the plaintiff asserts that Waterloo police officers violated his right to due process when obtaining an arrest warrant and Brad Walz should not have charged him with robbery in the first degree.  The plaintiff contends that, as evidenced by some statements of Waterloo police officers and video footage, probable cause to obtain an arrest warrant did not exist because he remained at the hotel and did not come back with the other robbery suspects. Lastly, the plaintiff maintains that an officer is not entitled to immunity if he knowingly or recklessly provides false statements.

> "Only the most severe violations of individual rights that result from the brutal and inhumane abuse of official power rise to" the conscience-shocking level.  *White v. Smith*, 696 F.3d 740, 757-58 (8th Cir. 2012) (quotation omitted).  In an extreme case, a police officer's intentional or reckless failure to investigate before making a complaint can support a substantive due process claim, but neither negligent nor grossly negligent failure to investigate amounts to a constitutional violation.  *See Amrine v. Brooks*, 522 F.3d 823, 833-34 (8th Cir. 2008).

*Davis v. White*, 794 F.3d 1008, 1015 (8th Cir. 2015); *accord Hall v. Ramsey Cty.*, 801 F.3d 912, 917-18 (8th Cir. 2015); *Hayden v. Nev. Cty.*, 664 F.3d 770, 772-73 (8th Cir. 2012).

Given the record, *see* App'x (docket no. 19-5) at 15-43, 52-70; Plaintiff's App'x (docket no. 21-1) at 3-17, it is clear that the plaintiff's assertions against the remaining defendants are baseless and/or frivolous. No official's conduct was conscious shocking. Waterloo police officers appropriately investigated the plaintiff and arrested him for committing robbery in the first degree. *See Amrine v. Brooks*, 522 F.3d 823, 831-33 (8th Cir. 2008). Various arrest warrants, including but not limited to an arrest warrant issued out of Illinois in January of 2015, were issued. *See* App'x (docket no. 19-5) at 15-43, 52-70. And, the charge of robbery in the first degree was dismissed without prejudice on December 11, 2015 because the plaintiff had been indicted in the Southern District of Indiana for conspiring to commit a string of robberies which included the robbery he committed in Iowa. *See* App'x (docket no. 19-5) at 67-69. That case is still pending. *See United States v. Kemp*, Case # 4:15-cr-00025-TWP-VTW (S.D. Ind. 201_).

Moreover, the plaintiff's allegations concerning the prosecution of his case in the State of Iowa by Brad Walz fails because a prosecutor is immune from civil rights claims that are based on actions taken in the performance of his prosecutorial duties. *See Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)); *Patterson v. Von Riesen*, 999 F.2d 1235, 1237 (8th Cir. 1993); *Snelling v. Westhof*, 972 F.2d 199, 200 (8th Cir. 1992). Because the record indicates that Brad Walz presented the State's case and took actions that were intimately associated with the judicial phase of the criminal proceedings, the plaintiff fails to state a claim upon which relief can be granted insofar as he maintains that Brad Walz violated his constitutional rights when initiating and pursuing a criminal prosecution. Brad Walz's advocative actions on behalf of the State of Iowa are shielded from suit.

## VII. CONCLUSION

In light of the foregoing, the Jail Defendants' motion to amend/correct their appendix in support of their motion for summary judgment (docket no. 24) is **GRANTED**;

the plaintiff's motion to supplement his response (docket no. 25) is **GRANTED**; the Jail Defendants' motion for summary judgment (docket no. 19) is **GRANTED**; and the claims against the remaining defendants are **DISMISSED**. The clerk's office is **DIRECTED** to enter judgment in favor of the defendants. The clerk's office is also **DIRECTED** to close this case.

      **IT IS SO ORDERED**.

      **DATED** this 13th day of February, 2017.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA